IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO: 1:23-CV-01087

| | |
|---|---|
| Tal Johnson, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>Pfeiffer University, )<br>Susan Blair, in her individual capacity, )<br>Elizabeth Fain in her individual capacity, )<br>Christopher Boe, in his individual capacity, )<br>        Defendants. ) | COMPLAINT |

NOW COMES Plaintiff, Tal Johnson, and for his Complaint against Pfeiffer University, Susan Blair in her individual capacity, Elizabeth Fain in her individual capacity, and Christopher Boe in his individual capacity, alleges and says as follows:

JURISDICTION AND VENUE

1. This action is brought to remedy discriminatory discipline against Plaintiff on the basis of race, and the emotional distress Plaintiff experienced due to Defendants' actions.

2. Plaintiff's Complaint is brought under Title VI of the Civil Rights Act of 1964 (hereinafter "Title VI") as set forth in 42 U.S.C. §2000d, *et. seq.*, and a Deprivation of Civil Rights provided for in 42 U.S.C. §1983.

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343 (civil rights and elective franchise) 42 U.S.C. §2000d (Title VI), and 42 U.S.C. § 1983 (civil action for deprivation of rights).

4. This Court should assume supplemental jurisdiction to Plaintiff's state law claims for negligent infliction of emotional distress and civil conspiracy pursuant to 28 U.S.C. 1367 (supplemental jurisdiction).

5. Venue is proper pursuant to 28 U.S.C. 1391 (b)(c) and (d) as a substantial part of the events, if not all of the events, giving rise to this complaint occurred in Misenheimer, Stanly County North Carolina and Albemarle, Stanly County North Carolina, and upon information and belief, all parties were citizens and residents of North Carolina at the times that the acts and incidents giving rise to this complaint occurred.

## PARTIES

6. Tal Johnson (hereinafter "Plaintiff") is a citizen and resident of Washington, District of Columbia. At the time of the events described in this Complaint, Plaintiff was a resident of Charlotte, Mecklenburg County, North Carolina. Plaintiff is an African American male and a former Master of Science student in the Occupational Therapy program at Pfeiffer University.

7. Pfeiffer University (hereinafter "Defendant Pfeiffer" or "Pfeiffer") is a private university located in Misenheimer, Stanly County, North Carolina.

8. Susan Blair, PhD (hereinafter "Defendant Blair"), a white female, was/is the Academic Fieldwork Coordinator at Defendant Pfeiffer and Plaintiff's student advisor during the events described in this Complaint, and she is being sued in her individual capacity. Upon information and belief, Defendant Blair was a citizen and resident of North Carolina at the time of the events described in this Complaint.

9. Elizabeth Fain, PhD (hereinafter "Defendant Fain"), a white female, was the Occupational Therapy Program Director and Associate Dean of Health Sciences at Defendant Pfeiffer and is being sued in her individual capacity. Upon information and belief, Defendant Fain is a citizen and resident of North Carolina.

10. Christopher Boe, PhD (hereinafter "Defendant Boe"), a white male, was and is the Dean of Pfeiffer University's Graduate School and is being sued in his individual capacity. Upon information and belief, Defendant Boe is a citizen and resident of North Carolina.

## FACTUAL ALLEGATIONS

11. In or about August 2020, Plaintiff, an African American male, enrolled at Defendant Pfeiffer to pursue a Masters' degree in the Occupational Therapy program (hereinafter "the Program").

12. Plaintiff's father is a Veteran entitled to Chapter 35 Veterans Administration (hereinafter "VA") benefits. At all times relevant to this matter, Plaintiff utilized these benefits to attend Defendant Pfeiffer.

13. Plaintiff was a member of Defendant Pfeiffer's first cohort of the program.

14. At all times relevant to this action, Defendant Fain was the Director of the Program. Upon information and belief, she is no longer the Director of the Program.

15. At all times relevant to this action, Defendant Blair was the Academic Coordinator for Fieldwork and Plaintiff's student advisor.

16. Plaintiff was one of a few male African American students in the program. Throughout his time at Pfeiffer, Plaintiff was subjected to different treatment than his White classmates. Specifically, he was treated with hostility by the faculty of the program that no other student was subjected to.

17. On or about June 24, 2021, Plaintiff was involved in a car accident and was hospitalized until June 26, 2021. Despite being discharged, Plaintiff was still hooked up to drainage tubes, required a cane to walk, and had over thirty stitches on his knees, the side of his right leg, and above his left eye.

18. Between July 1, 2021, and July 10, 2021, Plaintiff contracted bronchitis and an upper respiratory tract infection.

19. As part of his coursework in the Program, Plaintiff was required to attend Level lB Adult Fieldwork (hereinafter "the camp"), a forty-hour one-week camp from July 12, 2021, through July 16, 2021. Most of the work was completed in groups. Despite his ailments, Plaintiff completed his required Level lB Adult Fieldwork through participation in Pfeiffer Therapy Camp.

20. Though he worked to the best of his ability, completed his assignments, and contributed to group assignments, Plaintiff received a failing score from the Academic Fieldwork FW Committee and was recommended for remediation and repeat of level 1B Adult/Geriatric fieldwork.

21. Prior to the camp, Plaintiff passed all his classes and earned a grade point average of over 3.0.

22. On July 27, 2021, Plaintiff met with Defendant Fain, Defendant Blair, Dr. Chip Palmer, the Director of Learning and Academic Success, and Professor Paulina Graham, the Experiential Clinic Coordinator, and an Assistant Professor (collectively "the remediation committee") to discuss remediation. Dr. Palmer was assigned as Plaintiff's advocate. The remediation committee notified Plaintiff that he would have to complete a one-on-one remediation program with Professor Graham due to his failing grade for the fieldwork camp.

23. During this meeting, Defendant Fain, Defendant Blair, Professor Graham, and Dr. Palmer belittled Plaintiff and attempted to convince him to choose a field outside of occupational therapy. The staff members caused Plaintiff to feel alienated from his cohort. Plaintiff was further concerned that, as it was Defendant Pfeiffer's first cohort in the program, there was no standard upon which to base his failing of the camp week.

24. The new remediation plan was scheduled to begin on August 30, 2021, and end on October 11, 2021. Plaintiff was expected to complete his normal course work in addition to the remedial work from the camp over the course of the four (4) week remediation program.

25. On or about July 30, 2021, Plaintiff began seeing Valerie Oxendine for the depression, anxiety, and trauma caused by Defendants.

26. On August 30, 2021, Plaintiff was to have a one-week break before beginning his Fall classes. However, the remediation committee required Plaintiff to do an evaluation session with a client which would contribute to his forty-hour remediation plan.

27. When Plaintiff arrived at the evaluation, he was required to watch a movie with the incoming cohort entering the program. This made Plaintiff feel ashamed and belittled as he was being grouped with students at a skill level below his own.

28. Plaintiff's coursework for the Fall 2021 semester included nine credit hours of classes.

29. The remediation coursework was more difficult than Plaintiff's typical coursework. Plaintiff was often informed of remediation course assignments and/or required attendance at events at the last minute and was required to attend on days in which school was not in session.

30. Plaintiff was also required to complete assignments which were part of the first-year program curriculum. Plaintiff failed several of these assignments despite having passed them easily during his first year.

31. Although a four-week timeline was given for the remediation program, it ultimately took Plaintiff almost three months to complete the remediation due to the excessive and inappropriate work assigned by the remediation committee.

32. The remediation committee continuously modified Plaintiff's schedule of assignments while adding benchmark assessments, similar to pop quizzes, in which Plaintiff was not allowed to use resources, such as textbooks.

33. As a result of the discriminatory structure and stress of the remediation plan, Plaintiff failed Remediation for Level 1B Adult Fieldwork.

34. The remediation plan began impacting Plaintiff's mental health: his anxiety increased to the point that he would shake and feel overwhelmed, and he began to experience symptoms of depression.

35. On or about August 30, 2021, Plaintiff became aware of a white female student, A.R., in the program who missed the Adult Fieldwork Camp week and was also required to complete the remediation program. Upon information and belief, A.R.'s remediation plan was not as extensive as Plaintiff's—indeed, A.R. was able to write a paper in lieu of completing the field work, while Plaintiff was required to complete a rigorous extended remediation plan on top of his normal course work.

36. On September 13, 2021, Plaintiff arrived at a meeting with Professor Paulina Graham and Dr. Palmer to discuss his plan of success, which measured his progress in the remediation program. Plaintiff believed this meeting was specifically about his remediation and progress; he had no reason to believe that he would be expected to complete any assessment.

37. When Plaintiff arrived at the meeting, he was told to put his phone and laptop away so he could take a performance assessment, allegedly related to assignment two of the remediation plan. Plaintiff was caught off guard and felt intimidated.

38. Plaintiff ultimately earned a five (5) out of twenty-five (25) in the area of competency.

39. After completing the assessment, Professor Graham casually asked Plaintiff if he had ever thought about doing something other than becoming an occupational therapist.

40. Although Dr. Palmer was present in the meeting as Plaintiff's student advocate, he remained silent while Plaintiff was subjected to this treatment.

41. Following the meeting, Plaintiff lost sleep for several days and became severely depressed.

42. On September 16, 2021, Plaintiff was called into a meeting led by Defendant Fain regarding the performance assessment given on September 13, 2021.

43. Although Plaintiff had two weeks left in the remediation program, Defendant Fain, Professor Graham, Defendant Blair, and Dr. Palmer presented Plaintiff with paperwork stating that he had failed the remediation program. They began pressuring Plaintiff to sign the remediation meeting form, which stated that he agreed to withdraw from the Occupational Therapy program. Plaintiff refused to sign the paper.

44. On or about September 17, 2021, Plaintiff arrived to complete a scheduled treatment session with a client. However, Defendant Fain instead escorted him to the third floor of the Center for Health Sciences building, an isolated part of the building.

45. Plaintiff soon discovered that he was being required to complete a second unscheduled performance assessment, this time related to assignment three of the remediation plan. Plaintiff was tasked to come up with a treatment plan with three goals and three activities for a client. Plaintiff's plan involved a balloon, and he brought some balloons as part of his demonstration.

46. As Plaintiff attempted to demonstrate his plan with the balloons, Defendant Fain made him feel uncomfortable by not permitting Plaintiff to explain his plan or goal.

47. Defendant Fain seemed to become frustrated during the meeting. She drew a picture of a balloon on a whiteboard in the room and forced Plaintiff to repeatedly tap on the drawing to demonstrate, allegedly, what he meant by "tap" in his plan.

48. Defendant Fain insisted that Plaintiff continue to tap the drawing while Dr. Palmer watched silently. When Plaintiff attempted to stop tapping and explain the plan, Defendant Fain interrupted him and insisted that he continue to tap on the drawing.

49. Defendant Fain asked if a third-party insurance company would pay for a bill if that were the goal, insinuating that Plaintiff's plan and goals were deficient and further belittling Plaintiff. She then had Plaintiff continue to tap on the drawing.

50. At no time did Dr. Palmer intervene on Plaintiff's behalf.

51. On or about September 22, 2021, Plaintiff met with Dr. Christopher Boe in response to Plaintiff's remediation appeal letter. Dr. Boe gave Plaintiff his personal phone number to call or text him with his concerns. His assistant was also in the meeting taking notes.

52. On September 30, 2021, Plaintiff was determined to have scored 793 out of a possible 1370 points in the remediation program, which was a failing grade. This also qualified as a second failure of the Level IB Adult Fieldwork.

53. On October 4, 2021, the Academic Performance Professionalism Review Committee (hereinafter "APPRC") met to review Plaintiff's performance in the Program. Plaintiff was not present at this meeting. The committee was composed of Dr. Palmer, Dr. Crystal Gaddy, Assistant Professor Graham, and Defendant Blair.

54. The APPRC voted to dismiss Plaintiff from the Program with the option to withdraw from the program and determined that it was necessary for Dr. Robert Cox, the Director of Counseling Services, be present when this news was delivered to Plaintiff.

55. When Plaintiff was presented with the letter of dismissal from the program, he immediately had a panic attack. Plaintiff had to contact his therapist.

56. On or about October 11, 2021, Plaintiff submitted a grade appeal letter to Dr. Boe requesting to change his camp grade and remediation program grade from failing to passing. In the letter, he described the remediation plan and treatment by the remediation committee, and their effects on his health. Despite circumstances he was subjected to, Plaintiff stated he had "no intention of quitting" the program and would continue to dedicate himself to the same.

57. On October 14, 2021, Plaintiff emailed Dr. Palmer to request a copy of his signed remediation plan, which he was told was in his student file. Dr. Palmer told Plaintiff that if he needed any further documents or clarification, Plaintiff should contact Defendant Fain.

58. On October 19, 2021, Dr. Boe issued a letter to Plaintiff upholding the APPRC's recommendation to dismiss Plaintiff from the program. Dr. Boe notified Plaintiff that "[t]he Occupational Therapy Handbook does not provide a pathway for you to withdraw with passing grades when you fail a course" nor does it "provide an opportunity for reinstatement in the subsequent semester".

59. Plaintiff received grades of "W" ("withdraw") for the courses in which he was enrolled at the time of his dismissal.

60. Despite having knowledge of the discriminatory treatment of Plaintiff and the events described above, Dr. Boe upheld the APPRC's decision.

61. Plaintiff could not proceed with Level 1C Pediatric Fieldwork—the next required coursework for the program, because of the remedial work he was required to do.

62. On or about October 19, 2021, Plaintiff was removed from the program and told to gather all of his personal belongings from the building by the close of business on October 20, 2021.

Plaintiff was ultimately dismissed from Defendant Pfeiffer due to his inability to complete the program free from discrimination, and harassment.

63. Plaintiff used his VA benefits to attend Pfeiffer.

64. On or about August 22, 2022, Plaintiff enrolled in the Doctor of Occupational Therapy program at Howard University in Washington, D.C.

65. Plaintiff has maintained good grades and performed well at Howard and is scheduled to graduate in May 2025.

## FIRST CLAIM FOR RELIEF: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. §2000d) AGAINST DEFENDANT PFEIFFER UNIVERSITY

66. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

67. As an African American male, Plaintiff is a member of a protected class under Title VI.

68. Defendant Pfeiffer University is a federally funded educational institution subject to Title VI.

69. Defendant Pfeiffer University was responsible for ensuring that Plaintiff was able to obtain his education void of discrimination.

70. Plaintiff is entitled to participate in and be given the benefits of the Program including, without limitation regardless of his race or color.

71. If Defendant has not discriminated against Plaintiff by requiring him to complete extraneous requirements, failing to consider mitigating circumstances, and dismissing him from the program, Plaintiff would have been qualified to continue in the educational program.

72. As a result of Defendants' actions, Plaintiff suffered adverse action. Specifically, in addition to being dismissed from the program, Plaintiff used VA benefits to get his master's degree without actually obtaining the same. These benefits cannot be refunded.

73. Plaintiff was treated differently from similarly situational students who were not members of a protected class. Defendant's requirements for Plaintiff's remediation were not required for any other students in the program.

74. Plaintiff is entitled to recover compensatory, punitive, and other damages as provided by the 1964 civil Rights Act, 42 U.S.C. §2000d, *et. seq*. ("Title VI") in an amount exceeding $50,000.00 as a proximate result of Defendants' conduct as alleged herein.

<u>SECOND CLAIM FOR RELIEF: RACIAL HARASSMENT AND RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1983 AGAINST DEFENDANTS FAIN, BLAIR, AND BOE</u>

75. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

76. The actions of Defendants Fain and Blair, as alleged herein, constitute harassment and intentional discrimination on the basis of Plaintiff's race, in violation of 42 U.S.C. §1983.

77. Defendant Boe was notified by Plaintiff of the ongoing racial harassment Plaintiff experienced. Defendant Boe did not take any action against Defendants Fain and Blair.

78. Defendant Boe's failure to intervene constitutes deliberate indifference and supervisor liability under 42 U.S.C. §1983.

79. Plaintiff is entitled to recover compensatory damages as provided by 42 U.S.C. §1983, in an amount exceeding $25,000.00 as a proximate result of Defendants' conduct as alleged herein.

80. Plaintiff is entitled to punitive damages as provided as provided by the 42 U.S.C. §1983, in an amount exceeding $25,000.00 as a proximate result of Defendants' conduct as alleged herein.

81. Plaintiff is further entitled to recover reasonable attorney's fees; the costs and expense of this action and such interest as may be allowed by the law.

82. Defendants' actions as alleged herein were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's civil rights under 42 U.S.C. §1983.

### Third Claim for Relief: Racial Harassment in Violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d) Against Defendant Pfeiffer University

83. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

84. Defendant Pfeiffer University is a federally funded educational institution subject to Title VI.

85. Defendant Pfeiffer University was responsible for ensuring that Plaintiff was able to obtain his education void of harassment.

86. Plaintiff is entitled to participate in and be given the benefits of the Program including, without limitation regardless of his race or color.

87. Plaintiff was subjected to harassment based on his race, including, *inter alia*, being required to complete a remediation plan different from that of his similarly situated peers; being subjected to unfair and hazing behavior by University faculty; being required to attend unscheduled meetings; and being required to complete unscheduled assessments without materials given to similarly situated peers.

88. The harassment Plaintiff experienced was sufficiently pervasive to create a hostile or abusive environment his educational program, to the extent that Plaintiff declined to return to Pfeiffer University.

89. There is a basis to impute liability to the Defendants.

90. Plaintiff is entitled to recover compensatory, punitive, and other damages as provided by the 1964 civil Rights Act, 42 U.S.C. §2000d, *et. seq*. ("Title VI") in an amount exceeding $25,000.00 as a proximate result of Defendants' conduct as alleged herein.

91. Plaintiff is further entitled to recover reasonable attorney's fees, the costs, and the expenses of this action, and such interest as may be allowed by law.

### Fourth Claim for Relief: Retaliation in Violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d) Against Defendant Pfeiffer University

92. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

93. Plaintiff is entitled to participate in and be given the benefits of the Program including, without limitation regardless of his race or color.

94. Plaintiff was engaged in a protected activity. Plaintiff has the right to obtain an education free from discrimination and harassment. Moreover, Plaintiff has the right discrimination and harassment without being penalized for doing the same.

95. Defendant took adverse action Plaintiff. Specifically, Defendant required extraneous remediation requirements for Plaintiff that was not required for other students. Additionally, Defendant caused Plaintiff to have to complete a remediation course, in addition to his traditional course load, which resulted in Plaintiff not performing well in any of the courses. These requirements affected Plaintiff's ability to obtain the benefit of his education.

96. But for Defendants discriminatory actions with regard to Plaintiff, Plaintiff would have been able to successfully remediate the course and likely would have completed the Program.

97. Plaintiff is entitled to recover compensatory, punitive, and other damages as provided by the 1964 civil Rights Act, 42 U.S.C. §2000d, *et. seq*. ("Title VI") in an amount exceeding $100,000.00 as a proximate result of Defendants' conduct as alleged herein.

98. Plaintiff is further entitled to recover reasonable attorney's fees, the costs, and the expenses of this action, and such interest as may be allowed by law.

<u>FIFTH CLAIM FOR RELIEF: VIOLATIONS OF RIGHTS SECURED BY THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983 AGAINST DEFENDANTS SUSAN BLAIR, ELIZABETH FAIN AND PFEIFFER UNIVERSITY.</u>

99. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

100. Plaintiff, an African American male, is a member of a protected class.

101. But for Defendants' discriminatory actions against Plaintiff, Plaintiff would have been qualified to continue in the educational program.

102. Plaintiff suffered adverse action as a result of Defendant's actions, namely, Plaintiff was dismissed from the program. Moreover, Plaintiff now has debt related to the program without the benefit of actually receiving a master's degree.

103. Plaintiff was similarly situated in all relevant aspects to other non-African American students in the program. Nevertheless, Defendants refused to permit Plaintiff to complete his master's degree program.

104. All of the actions taken by Defendant Pfeiffer University or those acting on behalf of Defendant, as alleged and referred to herein, including the interference and deliberate actions taken to restrict Plaintiff's ability to complete his Occupational Therapy Master's program, were done by Defendant Pfeiffer while acting under color or state of law and had the effect of depriving Plaintiff of rights secured by the Constitution and laws of the United States, specifically the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

105. Defendants' engaged acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's constitutional rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

106. Plaintiff is entitled to damages in an amount exceeding $100,000.00 as a proximate result of Defendants' conduct as alleged herein.

<u>SIXTH CLAIM FOR RELIEF: RACIAL HARASSMENT AND RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1983 AGAINST DEFENDANTS SUSAN BLAIR AND ELIZABETH FAIN</u>

107. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

108. The actions of Defendants Susan Blair and Defendant Elizabeth Fain, as alleged herein, constitute harassment and intentional discrimination on the basis of Plaintiff's race, in violation of 42 U.S.C. §1983.

109. Plaintiff was the only student who was required to complete the prolonged, convoluted remediation plan.

110. Defendants' actions as alleged herein were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's civil rights under 42 U.S.C. §1983.

111. Plaintiff is entitled to recover compensatory and punitive damages as provided by 42 U.S.C. §1983, in an amount exceeding $100,000.00 as a proximate result of Defendants' conduct as alleged herein.

112. Plaintiff is further entitled to recover reasonable attorney's fees; the costs and expense of this action and such interest as may be allowed by the law.

113. Defendants' actions as alleged herein were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's civil rights under 42 U.S.C. §1983.

SEVENTH CLAIM FOR RELIEF: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
AGAINST DEFENDANTS BLAIR AND FAIN

114. Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs.

115. Defendants Blair and Fain owed Plaintiff a reasonable duty of care.

116. Defendants Blair and Fain breached that duty of care and did not exercise reasonable care regarding Plaintiff in his enrollment in, and attempted completion of, the Program.

117. Defendants Blair and Fain behaved negligently when they harassed Plaintiff, or allowed Plaintiff to be harassed, when the failed him from the Adult Fieldwork portion from the program without assessing the need for or providing a reasonable accommodation, when they required more work from Plaintiff for remediation than they required of other similarly situated students, and when they interfered with his ability to complete and graduate from the Program.

118. It was reasonably foreseeable that Defendants Blair and Fain's behavior would cause severe emotional distress to Plaintiff.

119. Defendants Blair and Fain's conduct did, in fact, cause the Plaintiff severe emotional distress resulting in new or heightened diagnoses, including, *inter alia*, anxiety and depression, and requiring treatment by a mental health professional.

120. As a result of Defendants Blair and Fain's negligent infliction of emotional distress, Plaintiff is entitled damages in excess of $100,000.00.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants as follows:

1. A declaration that the acts and practices complained of herein are in violation of Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d).

2. A declaration that the acts and practices complained of herein are in violation of and 42 U.S.C. §1983.

3. An order that Defendants reinstate Plaintiff in the Occupational Therapy Master's degree program;

4. An order enjoining Defendants from all further acts of discrimination, harassment, and retaliation on the basis of race;

5. For a money judgment against Defendants for the violation of Title VI of the Civil Rights Act of 1964 in an amount in excess of $100,000.00, to be proven at trial;

6. For a money judgment against Defendants Susan Blair, Elizabeth Fain, and Pfeiffer University, jointly and severally, for the violation 42 U.S.C. §1983 in an amount in excess of $100,000.00 to be proven at trial;

7. For a money judgment against Defendants Susan Blair, Elizabeth Fain, and Pfeiffer University, jointly and severally, for the violation The Fourteenth Amendment to the United States Constitution;

8. For a money judgment against Defendants Susan Blair, Elizabeth Fain, and Pfeiffer University, jointly and severally, for lost educational benefits and privileges, compensatory, punitive, and other damages for an amount in excess of $100,000.00 to be determined specifically at the trial of this action.

9. For a money judgment representing pre-judgment interest.

10. For the court to retain jurisdiction over this action until Defendants have fully complied with the orders of the court and the court require Defendants to file such reports as may be necessary to supervise compliance.

11. For the costs of the suit, including an award of reasonable attorney's fees pursuant to federal law.

12. For any other and further relief as may be just, proper, and necessary to afford complete relief to Plaintiff and to provide Plaintiff that to which he is entitled at the time this action is tried; and

13. Plaintiff hereby requests a trial by jury.

Respectfully submitted,

This the 12th day of December, 2023.

/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
The Law Office of Neubia L. Harris, PLLC
312 West Millbrook Road, Suite 141
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies served a copy of the foregoing Complaint on the following via the CM/ECF electronic filing system:

Jeffrey Plyer
Registered Agent
Pfeiffer University
P O Box 960
Us Hwy 52 N
Misenheimer, NC 28109

Dr. Susan Blair
5158 Moseley Drive
Clemmons, NC 27012

Dr. Elizabeth Fain
621 Azalea Drive
Albemarle, NC 28001

Dr. Christopher Boe
924 McLaughlin Drive
Charlotte, NC 28212

This the 12th day of December 2023.

/s/ Neubia L. Harris
Neubia L. Harris
N.C. Bar No.: 42069
The Law Office of Neubia L. Harris, PLLC
312 West Millbrook Road, Suite 141
Raleigh, NC 27609
(919) 526-0500 (telephone)
(919) 589-3935 (facsimile)
neubia@neubiaharrislaw.com